1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 12  BRIAN APPLEGATE, | Case No.  1:15-cv-01054-AWI-MJS (PC) |
| 13      Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S SURREPLIES** |
| 14      v. | |
| 15  WINFRED KOKOR, | **(ECF No. 33)** |
| 16      Defendant. | **CLERK TO STRIKE ECF NOS. 31 & 32** |
| 17 | **FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| 18 | |
| 19 | **(ECF No. 25)** |
| 20 | |
| 21 | **FOURTEEN (14) DAY OBJECTION DEADLINE** |
| 22 | |

23
24
25
26
27
28

    Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. The action proceeds against Defendant Dr. Winfred Kokor on Plaintiff's Eighth Amendment inadequate medical care claim. (ECF No. 1.)

Before the Court is Defendant's May 17, 2016 motion for summary judgment. (ECF No. 25.) Plaintiff filed an opposition (ECF No. 27), and Defendant filed a reply. (ECF No. 28.)[1] The matter is deemed submitted. Local Rule 230(*l*).

Also before the Court are two surreplies filed by Plaintiff (ECF Nos. 31 & 32) and Defendant's motion to strike same. (ECF No. 33.) Plaintiff has not opposed Defendant's motion to strike and the time to do so has passed. Defendant's motion to strike is also submitted.

## I.    Legal Standard

A motion for summary judgment is the proper means to raise a prisoner's failure to exhaust administrative remedies. Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). Defendants have the burden of proving Plaintiff failed to exhaust available administrative remedies. See Jones v. Bock, 549 U.S. 199, 216 (2007) (failure to exhaust is an affirmative defense). A defendant's burden of establishing an inmate's failure to exhaust administrative remedies has been characterized by the Ninth Circuit as "very low." Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012).

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Albino, 747 F.3d at 1166. If material facts are disputed, summary judgment should be denied, and the Court should decide disputed factual questions relevant to exhaustion "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." Id. at 1169-71.

---

[1] Plaintiff also submitted an "Amended Opposition" (ECF No. 29) and Defendant replied to the same. (ECF No. 30.)

Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007), and it must draw all inferences in the light most favorable to the nonmoving party, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011).

## II.   Factual Summary

Unless otherwise noted, the Court finds the following facts undisputed.

### A.   Plaintiff's Allegations

Plaintiff has chronic ankle pain, which causes him difficulty when walking, and he suffers from dizziness, headaches, and balance issues as a result of numerous past concussions. (Compl. (ECF No. 1) at 31, ¶¶ 23-24.)  In 2007, a Disability Placement Program Verification Form 1845 ("Form 1845") was issued at North Kern State Prison ("NKSP") in Delano, California, designating Plaintiff as "DNM," meaning an inmate with a permanent mobility impairment who can walk 100 yards without pause or assistive devices. ("Form 1845," Def.'s Mot. Summ. J. ("MSJ") Ex. E (ECF No. 25-12) at 13.) Plaintiff was granted a "no stairs" accommodation, a brace, and a lower bunk. <u>Id.</u>

In April 2007, Plaintiff was transferred to Calipatria State Prison ("CAL") in Calipatria, California, where the accommodations from NKSP were continued. (Compl. at 32, ¶ 27.) These accommodations were indicated as permanent as of 2010. (<u>Id.</u>; Compl. Exs. M-O (ECF No. 1 at 83-85)).

In January 2011, Plaintiff was transferred to the LA County Jail on a court furlough where after several appeals he was granted permanent accommodations for,

1  inter alia, a lower tier and bunk, a handicapped accessible shower, and a brace.

2  (Compl. at 32, ¶ 28; Ex. T (ECF No. 1 at 90)).

3     In 2012, Plaintiff was transferred to Corcoran State Prison in Corcoran, California

4  ("CSP-Cor"). (Compl. at 33, ¶ 29.) In 2014, Plaintiff's prior accommodations (ground

5  floor cell, bottom bunk, no stairs, and brace) were continued as permanent and an

6  orthotic shoe and shoe insert were also added as permanent accommodations. (Compl.

7  Ex. V (ECF No. 1 at 93)).

8     On July 16, 2014, Plaintiff was transferred to the California Substance Abuse

9  Treatment Facility ("CSATF"). (Decl. of J. Corral in Supp. of MSJ (ECF No. 25-6) ¶ 5.)

10  On August 6, 2014, Plaintiff had a medical appointment with Defendant; Defendant

11  subsequently rescinded Plaintiff's lower tier accommodation, "ADA/DNM status," and

12  accessible shower access, though he did grant Plaintiff a lower bunk, ankle brace,

13  orthotic shoes, and job assignment restrictions. (Compl. at 34, 104 ("August 6, 2014

14  Form 7410"); id. at 105 ("Primary Care Provider Progress Note Form 7230-M"); and id.

15  at 107 ("Physician's Orders Form 7221."))  Defendant rescinded these accommodations

16  in retaliation against Plaintiff after Plaintiff threatened to sue him. (Id.  at 43.) On July 9,

17  2015, Plaintiff filed the instant suit. (Id. at 1.)

18     **B.   Facts Relating to Exhaustion**

19     In relation to the above encounter, Plaintiff filed an administrative appeal, Appeal

20  Log No. SATF-HC-14060077 (the "First Appeal"), which was received by the institution

21  on August 12, 2014. (MSJ Ex. G (ECF No. 25-14) at 4.) The appeal proceeded directly

22  to the Second Level Review ("SLR"). (Id. at 6.)

23     In this appeal, Plaintiff complained that Defendant told Plaintiff he "did not qualify

24  for lower [tier]/lower [bunk] . . . [at] CSATF, though [Plaintiff] is ADA/DNM [and] had

25  lower [tier]/lower [bunk] [with no] stairs since 2007." Id. Plaintiff requested a "podiatry

26  determination of lower [tier]/lower [bunk]" and for "CDCR to abide accommodations that

27  are permanent." Id. The grievance does not state explicitly that Defendant rescinded

28  Plaintiff's ADA/DNM status and accessible shower. Id. It also does not mention

4

Defendant's retaliatory motive. Id. Plaintiff avers, however, that during the October 3, 2014 interview with Nurse M. Carrasquillo conducted pursuant to the SLR, he:

> "[D]id go into detail about the encounter with [Defendant] on 8/6/14, and did specify the verbal exchange between [Defendant] and [Plaintiff], in the same manner [Plaintiff has] pleaded same via [Plaintiff's] lawsuit, such that [Plaintiff] did give the interviewer, and thus the state appeal apparatus, notice of [Plaintiff's] opinion that [Defendant] acted in retaliation."

(Decl. of Pl. in Opp'n to MSJ (ECF No. 29 at 12, ¶ 1)).

While the Institutional Response indicates that the above interview took place, it does not document the content of the interview. (MSJ Ex. G at 6 ("Institution Response for Second Level HC Appeal")). The SLR also does not address the rescission of Plaintiff's ADA/DNM status or Defendant's retaliatory motive. Id. The SLR affirmed Defendant's rescission of Plaintiff's lower tier chrono. Id. Plaintiff submitted this appeal to the Director's level of review; therein, he complained that Defendant never medically evaluated him, and he accused the SLR reviewers of falsifying documents in an effort to deny Plaintiff adequate medical care and accommodations under the ADA. (MSJ Ex. G at 5.) Plaintiff did not raise Defendant's rescission of his ADA/DNM status or retaliatory motive. Id. This appeal was denied at the Director's level on January 2, 2015. (Decl. R. Robinson in Supp. of MSJ (ECF No. 25-7) ¶ 14). The Director's response does not address Defendant's retaliatory motive or the rescission of Plaintiff's ADA/DNM status.

Plaintiff also submitted a Form 1824 Reasonable Accommodation Request, Log No. SATF-D-14-05983, which was received by the institution on December 2, 2014; this form is used to request a Reasonable Accommodation Panel ("RAP") Response from the ADA Coordinator or his/her designee. (Corral Decl. ¶ 6, Ex. A.) Therein, Plaintiff requested access to an accessible shower, a lower tier accommodation, X-rays, an ankle brace, and a podiatry referral. Id. In response, Plaintiff was granted access to an accessible shower, but was denied a lower tier accommodation and X-rays. Id. Plaintiff states that the RAP response constituted a reinstatement of Plaintiff's ADA/DNM status. (Compl. at 44.) However, Plaintiff's ADA/DNM status is not addressed in the RAP

response. (Corral Decl. Ex. A.)

If an inmate is dissatisfied with the response to his Form 1824, he may file an administrative appeal. (Corral Decl. ¶ 3.) Accordingly, Plaintiff filed another 602, Appeal Log No. SATF-HC-14060777 (the "Second Appeal"). This appeal also bypassed the first level. (MSJ Ex. E at 7.)

In the appeal, Plaintiff complained about "ADA Accommodations; X-ray; 1824 Provisions." (Robinson Decl. ¶ 12; MSJ Ex. E (ECF No. 25-12) at 4.) Specifically, Plaintiff complained that the "RAP denial did not afford [Plaintiff a] no stairs accommodation" or an X-ray of his foot and ankle. Id. He requested that prison officials "provide a 'no stairs' accommodation, & X-rays of r[ight] foot/ankle, and provision of [Plaintiff's] 1824 (not returned by RAP)." Id. At the SLR, Plaintiff was granted the X-rays but denied the "no stairs" accommodation. (MSJ Ex. G at 8.) The SLR response does not mention Plaintiff's ADA/DNM status. Id. Plaintiff then appealed to the Director's level, complaining that the SLR response ignored his ankle fracture and neurological problems and reiterating his difficulty walking. (MSJ Ex. E at 5.) He does not mention the rescission of his ADA/DNM status. Id. This Second Appeal was denied at the Director's level on May 4, 2015; the decision does not address Plaintiff's ADA/DNM status. (Id. at 2.)[2]


## III.    Exhaustion Analysis

### A.    Legal Standard

The Prison Litigation Reform Act ("PLRA") stipulates, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Therefore, prisoners are required to exhaust all available administrative remedies prior

---

[2] Plaintiff filed five additional 602s between February 9, 2015 and April 16, 2015 that were either screened out or exhausted after the filing of this case. Plaintiff does not contest Defendant's argument that these 602s did not serve to exhaust Plaintiff's claims; therefore, they will not be discussed here.

1   to filing suit. Jones, 549 U.S. at 211.

2       "The primary purpose of a [prisoner's administrative] grievance is to alert the
3   prison to a problem and facilitate its resolution, not to lay groundwork for litigation."
4   Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). "A grievance need not include
5   legal terminology or legal theories unless they are in some way needed to provide
6   notice of the harm being grieved. A grievance also need not contain every fact
7   necessary to prove each element of an eventual legal claim." Id. Instead, the grievance
8   must "alert the prison to the nature of the wrong for which redress is sought," and must
9   give the prison an opportunity "to reach the merits of the issue." Id. at 1120-21.  Thus,
10  the requirement to exhaust exists only so long as some remedy to right the wrong
11  alleged is available. Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005).

12      The CDCR has set forth a three-level formal grievance process for prisoners. Cal
13  Code Regs., tit 15 § 3084.7. Prisoners must first submit their grievances on a CDCR
14  Form 602 "describ[ing] the specific issue under appeal and the relief requested." Cal
15  Code Regs tit. 15 § 3084.2(a). If a prisoner is not satisfied with the response he
16  receives, he may submit his appeal to the second level of review, after which he may
17  appeal to the third and final level, called the Director's Level. Cal. Code Regs. tit. 15 §
18  3084.7.

19      A final decision at the Director's Level satisfies the PLRA's exhaustion
20  requirement. Gatlin v. Nichols, No. CIV S-06-2465 WBS GGH, 2007 WL 4219170 (E.D.
21  Cal. Nov. 29, 2007). However, a prisoner need not pursue his appeal through all three
22  levels if the relief he seeks is granted at a lower level. Harvey v. Johnson, 605 F.3d 681,
23  685 (9th Cir. 2010) ("An inmate has no obligation to appeal from a grant of relief, or a
24  partial grant that satisfies him, in order to exhaust his administrative remedies.")

25      Furthermore, inmates seeking accommodations under the ADA must submit a
26  Reasonable Accommodation Request Form 1824 ("Form 1824"). See Cal Code Regs,
27  tit. 15 § 3085. A Form 1824 constitutes an informal request procedure that is the
28  preliminary step for inmate ADA accommodation requests, and should be utilized before

1  pursuing the formal grievance process. <u>Gatlin</u>, 2007 WL 4219170 at *1. If the inmate

2  disagrees with the response he receives from the Reasonable Accommodation Panel

3  ("RAP") he must pursue the formal 602 grievance process outlined above. <u>Id.</u>

4  **B.    Parties' Arguments**

5  Defendant argues that Plaintiff failed to exhaust his claims regarding the

6  rescission of his ADA/DNM status, the accessible shower, or Defendant's retaliatory

7  motive, since neither the First nor Second Appeals raised any of these issues.

8  Plaintiff argues he was not required to exhaust his request for shower access

9  since his request was granted pursuant to his Form 1824 request. Further, Plaintiff

10  maintains that he was not required to specifically allege Defendant's retaliatory motive

11  in his grievance forms, since the statements Plaintiff made during his SLR interview

12  were sufficient to put the prison on notice of Plaintiff's retaliation claim.[3]

13  Plaintiff also argues that the language of the First Appeal implied that Plaintiff

14  sought the reinstatement of his ADA status, since Plaintiff stated he was "ADA/DNM"

15  and requested that "CDCR abide accommodations that are permanent." Similarly, the

16  language of the Second Appeal implied that Plaintiff sought the reinstatement of

17  Plaintiff's ADA status, since Plaintiff listed "ADA Accommodation" as a subject of this

18  appeal.

19  **C.    Discussion**

20  **1.    Access to Shower Claim**

21  Plaintiff has adequately exhausted his claim for access to an accessible shower,

22  as the record clearly shows that Plaintiff requested, and was granted, access to an

---

[3] Plaintiff does not raise his retaliation argument in his opposition, but rather in an "amended opposition", construed as a supplemental opposition, filed after Defendant's reply. (Pl.'s Suppl. Opp'n, ECF No. 29) Plaintiff states that his supplemental opposition is based on his "subsequently having become informed of a 'good law' basis" for his new arguments. (Pl.'s Suppl. Opp'n at 1.) Neither the Federal Rules of Civil Procedure nor the Local Rules allow for such supplemental filings after a motion is fully briefed. <u>See</u> <u>Dell'Antonia v. California</u>, No. 1:00-cv-06602-LJO-SMS PC, 2007 WL 810096, at *1 (E.D. Cal. Mar. 15, 2007). However, Plaintiff argues he has a good faith basis for raising these new arguments, <u>see</u> <u>Seed Lighting Design Co., Ltd. v. Home Depot</u>, No. C 04-2291 SBA, 2005 WL 1868152, at *10 (N.D. Cal. Aug. 3, 2005), and as courts are required to give prisoners proceeding pro se a degree of leeway, on this occasion, the Court shall consider the merits of Plaintiff's new arguments. <u>See, e.g.</u>, <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1121 (9th Cir. 2012); <u>Watison v. Carter</u>, 668 F.3d 1108, 1112 (9th Cir. 2012).

1  accessible shower pursuant to the RAP response. While it is true that Plaintiff did not

2  request access to an accessible shower in either the First or Second Appeals, he was

3  not required to once that relief had been granted. Brown, 422 F.3d at 935. Defendant is

4  thus not entitled to judgment in his favor on this point.

5          **2.      "ADA Status" Claim**

6          Viewing the facts in the light most favorable to Plaintiff and assuming Defendant

7  indeed rescinded Plaintiff's ADA/DNM status subsequent to the August 6, 2014

8  appointment, the Court finds that Plaintiff has adequately exhausted his claims

9  regarding his ADA/DNM status. By appealing to prison officials to reinstate

10 accommodations he was entitled to prior to the August 6, 2014 appointment, Plaintiff

11 sufficiently put prison officials on notice that the wanted to maintain his ADA/DNM

12 status, and its corresponding accommodations. It would be inapposite to conclude that

13 Plaintiff had adequately exhausted the rescission of the accommodations incident to his

14 ADA/DNM status while simultaneously arguing that Plaintiff failed to adequately contest

15 the rescission of his ADA/DNM status itself.

16         The Court will recommend denying judgment in Defendant's favor on this claim.

17         **3.      Retaliation Claim**

18         Turning to Plaintiff's retaliation claim, Plaintiff concedes that he did not mention

19 Defendant's retaliatory motive on any of his written grievance forms. He maintains,

20 however, that he was not required to do so, as he put the prison on notice of

21 Defendant's retaliation during his SLR interview. Plaintiff cites to two cases in support of

22 this theory.

23         The first, El-Shaddai v. Wheeler, held that a prisoner had exhausted his

24 retaliation claim when his grievance form set forth sufficient facts by which the

25 defendants' retaliatory intent would necessarily come to light through the reasonable

26 investigation of the grievance. No. CIV S-06-1898 FCD EFB, 2008 WL 410711 (E.D.

27 Cal. Feb. 12, 2008). The Court noted that "[i]nsofar as prison officials investigate alleged

28 wrongdoing, the investigating officers presumably will determine the motives of the

9

1  officers in question where relevant to any consequences for the officers' actions." Id.

2  The second case Plaintiff relies on, Jennings v. Huizar, likewise assumed that

3  internal investigation would "reveal" the retaliatory motivations behind the defendants'

4  wrongdoing. No. CV 05-1365-PHX-JAT, 2007 WL 2081200, at *4 (D. Ariz. July 19,

5  2007). There, the Court held that a prisoner had sufficiently exhausted his retaliation

6  claim when he wrote in his grievance form that the defendant changed Plaintiff's work

7  assignment for an "improper purpose," thus "afford[ing] corrections officials time and

8  opportunity to address [Plaintiff's retaliation claim] internally." Id. Here, Plaintiff

9  maintains that he put the prison on notice of Defendant's motives during the

10 investigation of his claims since he relayed the substance of his conversation to Nurse

11 Carrasquillo during his SLR interview.

12 These cases are not dispositive. The nature of Plaintiff's grievances are such that

13 a reasonable prison official investigating Plaintiff's complaints would be on notice only of

14 Plaintiff's desire for medical treatment and accommodations. Nothing in them suggests

15 a retaliatory or otherwise improper motive for rescinding them. Plaintiff's bare

16 declaration that he "[went] into detail about the encounter with [Defendant] . . . in the

17 same manner [Plaintiff has] pleaded same via [Plaintiff's] lawsuit" does not support a

18 finding that Plaintiff actually conveyed to prison officials his belief Defendant's actions

19 were retaliatory. Rivera v. Nat'l R.R. Passenger Corp, 331 F.3d 1074, 1078 (9th Cir.

20 2003) ("[C]onclusory allegations unsupported by factual data cannot defeat summary

21 judgment"). There is no recorded evidence of what was actually said during this

22 interview. Plaintiff's argument that prison officials intentionally omitted the content of this

23 interview from their records is unsupported by facts.

24 Even if Plaintiff's SLR interview had put the prison on notice of Plaintiff's

25 retaliation claim, Plaintiff did not pursue such a claim to the third and final level.

26 Judgment in Defendant's favor on Plaintiff's retaliation claim is therefore appropriate.

27 **IV.   Motion to Strike Plaintiff's Surreplies**

28 After briefing on Defendant's summary judgment motion closed, Plaintiff filed two

unauthorized surreplies. (ECF Nos. 31 & 32.)  Defendant moves to strike both surreplies on the grounds that they are unauthorized and address no newly-raised arguments. (ECF No. 33.)

Parties do not have the right to file surreplies, and motions are deemed submitted when the time to reply has expired.  Local Rule 230(*l*). Plaintiff has not set forth any reasons why he should be permitted to file any surreplies, and indeed, his filings appear only to restate and reiterate arguments he has already made. See Hill v. England, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (courts should allow surreplies "only where a valid reason for such additional briefing exists.") Defendant's motion to strike will be granted, and Plaintiff's surreplies will be stricken from the record.

**V.    Conclusion and Recommendation**

Based on the foregoing, it is HEREBY ORDERED that:

1.  Defendant's motion to strike (ECF No. 33) is GRANTED; and

2.  The Clerk shall STRIKE Plaintiff's surreplies (ECF Nos. 31 & 32) from the record;

And it is HEREBY RECOMMENDED that:

3.  Defendant's motion for summary judgment on exhaustion grounds (ECF No. 25) be GRANTED in part and DENIED in part, as set forth in this order.

The findings and recommendation are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with the findings and recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file

objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   November 1, 2016      /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE